128 F.3d 1111
 44 U.S.P.Q.2d 1545
 MERIDIAN MUTUAL INSURANCE COMPANY, an Indiana corporation,
Plaintiff/Appellant,
v.
MERIDIAN INSURANCE GROUP, INC., an Illinois corporation,
Robert I. Schwimmer and David N. Schwimmer,
Defendants/Appellees.
 No. 97-1963.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 23, 1997.
Decided Oct. 29, 1997.
 
 Fred Foreman, Freeborn & Peters, Chicago, IL, Lisa A. Hiday, Daniel Leuders (argued), Woodard, Emhardt, Naughton, Moriarty & McNett, Indianapolis, IN, for Plaintiff-Appellant.
 Richard R. Winter (argued), Thomas P. Arden, McBride, Baker & Coles, Chicago, IL, for Defendants-Appellees.
 Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 This matter comes before us from the district court's denial of the plaintiff/appellant's motion for the issuance of a preliminary injunction. For the reasons discussed below, we reverse.
 
 BACKGROUND
 
 2
 The cast of characters in the present case is as follows: Plaintiff/appellant Meridian Mutual Insurance Company ("plaintiff") is an insurance company headquartered in Indianapolis, Indiana, which currently offers both personal and commercial lines of insurance. This includes homeowner's insurance, worker's compensation insurance, car insurance, and the like. Defendant/appellee Meridian Insurance Group, Inc. ("defendant")[1] is an Illinois-based insurance broker engaged in the sale of group life and health insurance plans. Defendant David Schwimmer is president and 97% shareholder of Meridian Insurance Group, and defendant Robert Schwimmer owns the remaining three percent of the company. With these opening credits behind us, we jump into the thick of the plot.
 
 
 3
 Plaintiff has been engaged in the insurance business since 1953 using the name "Meridian." Plaintiff also holds a registration on the term "MERIDIAN," on the Principal Register, for "underwriting life, health, property and casualty insurance" in International Class 36. The mark was registered on January 31, 1978 and has become incontestable under the Lanham Trademark Act, 15 U.S.C. § 1065. Plaintiff markets its insurance in nine Midwestern states (Illinois, Indiana, Iowa, Kentucky, Michigan, Ohio, Pennsylvania, Tennessee, and Wisconsin) through independent insurance agents--that is, through agents who sell policies from a number of different companies.
 
 
 4
 On July 22, 1996, Robert Schwimmer filed the articles of incorporation for the defendant in Illinois, adopting a corporate name containing the word "Meridian." This name had been conceived by David Schwimmer, who at the time had no knowledge of the plaintiff's existence. Before incorporating, the defendants had run a corporate name search in Illinois and several contiguous states. This search turned up the fact that "Meridian" could not be used by the defendants in Indiana or California because the name was already being used in some manner in the insurance industry. At any rate, defendant was issued its articles of incorporation by the State of Illinois, and began its brokering of group health and life insurance policies in November 1996. Defendant's sales territory is limited to the Chicago metropolitan area, and it targets as clients only businesses employing between 20 and 1,000 persons.
 
 
 5
 In December, 1996, plaintiff discovered the defendants' use of the name "Meridian" when it was denied a certificate of authority to do business in Illinois. On January 31, 1997, plaintiff filed suit against the defendants, alleging that their use of "Meridian" constituted service mark infringement, unfair competition, and a deceptive trade practice. The plaintiff also sought a preliminary injunction, which was denied by the district court after a hearing on the merits on February 20, 1997. Following the district court's denial of the plaintiff's motion to alter or amend judgment on March 20, 1997, the plaintiff filed a timely notice of appeal. In this appeal, the plaintiff asserts that the district court wrongly found that there was no likelihood of confusion between the parties' marks and thus erroneously denied preliminary injunctive relief. Additionally, plaintiff argues that the district court erred in denying its motion to alter or amend judgment, which sought a narrower injunction. With this brief history in mind, we turn to the appellant's contentions.
 
 DISCUSSION
 
 6
 In reviewing a district court's grant or denial of a preliminary injunction, we review the court's findings of fact for clear error, its balancing of factors for an abuse of discretion, and its legal conclusions de novo. Grossbaum v. Indianapolis Marion County Building Authority, 100 F.3d 1287, 1292 (7th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997) (citations omitted). When considering a motion for a preliminary injunction, a district court must weigh a number of factors. First, it must determine whether the moving party has demonstrated 1) some likelihood of prevailing on the merits, and 2) an inadequate remedy at law and irreparable harm if the injunction does not issue. If the party has done so, the court must next consider 3) the irreparable harm the nonmovant will suffer if the injunction is granted balanced against the irreparable harm to the movant if relief is denied, and 4) the effect granting or denying the injunction will have on nonparties (the "public interest"). Id. at 1291. An examination of these factors reveals that the district court erroneously found that there was no likelihood of confusion in this case and that its denial of the plaintiff's motion for a preliminary injunction must be reversed.
 
 1. Likelihood of Prevailing on the Merits
 
 7
 In order to prevail on its motion for a preliminary injunction, the plaintiff first needed to demonstrate that it has a likelihood of success on the merits of its case. In the preliminary injunction context, a "likelihood of success" exists if the party seeking injunctive relief shows that it has a "better than negligible" chance of succeeding on the merits. International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1084 (7th Cir.1988), citing Curtis v. Thompson, 840 F.2d 1291, 1296 (7th Cir.1988) (other citations omitted). In the trademark/service mark/unfair competition field, the movant shows a likelihood of success by establishing that 1) he has a protectable mark, and 2) that a "likelihood of confusion" exists between the marks or products of the parties. International Kennel, 846 F.2d at 1079, citing A.J. Canfield Co. v. Vess Beverages, Inc., 796 F.2d 903, 906 (7th Cir.1986) (other citations omitted). It is undisputed in this case that the plaintiff has registered the mark "Meridian" with regard to at least some aspects of the insurance field; therefore, we need only turn our attention to the district court's determination that there was no likelihood of confusion by the parties' concurrent use of the mark "Meridian."
 
 
 8
 In the Seventh Circuit, the following seven factors are used to evaluate whether a likelihood of confusion exists in trademark (and service mark) cases:
 
 
 9
 (1) similarity between the marks in appearance and suggestion;
 
 
 10
 (2) similarity of the products;
 
 
 11
 (3) area and manner of concurrent use;
 
 
 12
 (4) degree of care likely to be exercised by consumers;
 
 
 13
 (5) strength of complainant's mark;
 
 
 14
 (6) actual confusion; and,
 
 
 15
 (7) intent of defendant to "palm off his product as that of another."
 
 
 16
 Smith Fiberglass Products, Inc. v. Ameron, Inc., 7 F.3d 1327, 1329 (7th Cir.1993) (citations omitted); International Kennel, 846 F.2d at 1087. None of these factors considered alone is dispositive of the matter, and the weight each is to be accorded varies from case to case. Id. Furthermore, at this preliminary stage of the litigation, "the plaintiff must at a minimum establish that his or her chances of demonstrating a 'likelihood of confusion' are better than negligible." International Kennel, 846 F.2d at 1087. With these standards in mind, we turn our attention to the district court's analysis.
 
 A. Similarity of Marks
 
 17
 In its ruling on the plaintiff's motion, the district court noncommittally found that there was "some similarity" in the names used by the parties but, drawing "some significance to the manner in which these names are being used," also found that there was some dissimilarity between the names. The court found dissimilarity because the defendant's use of Meridian was "distinct in the sense that it's using Meridian Insurance Group, Inc.," because it used teal markings, and because of "everything else that surrounds" its use of the name. Tr. at 142. The factors weighing in favor of similarity were that the plaintiff's mark, "Meridian," was clearly being used by the defendant and that its use of that mark was in the insurance industry. The court did not enunciate whether this factor ultimately weighed for or against the plaintiff's motion, and as such we assume that the court did not weigh it strongly in favor of either party. However, the record shows that the parties' marks are similar, and the district court's finding was erroneous.
 
 
 18
 In comparing two marks to determine whether they are confusingly similar, this Circuit follows the rule that "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." International Kennel, 846 F.2d at 1087-88, quoting Henri's Food Products Co., Inc. v. Kraft, Inc., 717 F.2d 352, 356 (7th Cir.1983). However, when the public does not encounter the two marks together, it is inappropriate to focus on minor stylistic differences to determine if confusion is likely. International Kennel, 846 F.2d at 1088, citing Sun-Fun Products, Inc. v. Suntan Research & Development Inc., 656 F.2d 186 (5th Cir.1981). Courts must therefore make their comparison "in light of what happens in the marketplace," not merely by looking at the two marks side-by-side. James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir.1976). Applying these concepts to the present case, it is clear that the two marks at issue in this case are confusingly similar.
 
 
 19
 In both the plaintiff's mark and the defendants' mark, the principal, eye-catching word is "Meridian," followed closely by the word "insurance." The district court recognized this fact, along with the fact that both companies were using the salient word "Meridian" in the insurance industry, but then focused on the fact that "the manner in which it's [the defendant] using it with more or less the teal markings and everything else that surrounds it" made the parties' marks dissimilar. Examining the two marks "in light of what happens in the marketplace," however, the fact that the defendant uses a teal color on its stationery and a much-emphasized (and impressively onomatopoeic) "swoosh" in writing "Meridian" is of little consequence. The record shows that the parties do not place their respective renditions of the word "Meridian" in front of the public in a manner which would allow the general population to examine them and notice subtle differences. Rather, it shows that the "Meridian" mark is likely to be used in a vocal sense, through telephone calls either initiated by one of the parties or by their respective clients. Any visual distinctions between the parties' use of "Meridian" are irrelevant in the aural realm. A person hearing the two parties' names would likely focus on the word "Meridian" and gloss over the other words, and the parties are therefore using essentially the same mark. The district court's determination to the contrary is thus erroneous.
 
 B. Similarity of Products
 
 20
 Second, the district court examined the similarity of the products offered by the plaintiff and the defendant, noting that they are "distinctly different" and that the plaintiff does not operate to market the same types of insurance that the defendant does. Tr. at 142. In determining whether two products are similar, we have held that a plaintiff "need not demonstrate that it is in direct competition with an alleged infringer to establish likelihood of confusion." International Kennel, 846 F.2d at 1089. See also Professional Golfers Ass'n of America v. Bankers Life & Casualty Co., 514 F.2d 665, 669 (5th Cir.1975) ("Direct competition is not the sine quo non of trademark infringements; rather the gist of the action lies in the likelihood of confusion to the public."). The defendants, while acknowledging this principle, argue that the insurance business should not be viewed as a whole and cite several cases for the notion that it is a fallacy to categorize together all businesses dealing with insurance. Many of these cases are district court cases which are nonbinding on (and nonpersuasive to) this Court, and the two appellate cases cited are from outside this District and do not stand for the proposition for which they are cited.
 
 
 21
 In Prudential Insurance Co. of America v. Gibraltar Financial Corp. of California, 694 F.2d 1150, 1155 (9th Cir.1982), cert. denied, 463 U.S. 1208, 103 S.Ct. 3538, 77 L.Ed.2d 1389 (1983), the Ninth Circuit found that a savings and loan whose insurance sales to depositors amounted to 0.3% of its total business was not a competitor of an insurance company. The Court noted, however, that "[a] different case would be presented if [defendant] attempted to enter the general insurance market on a broad scale." Prudential, 694 F.2d at 1155. In the other case, Sears, Roebuck & Co. v. All States Life Insurance Co., 246 F.2d 161, 169-70 (5th Cir.), cert. denied, 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192 (1957), the Fifth Circuit found that a state regulatory decision allowing two insurance companies to use an almost identical name in connection with different lines of insurance was "of great relevance and should be given great weight" in determining whether infringement had taken place. This answered an evidentiary question, however, and did not establish that the insurance industry may never be viewed as a whole.
 
 
 22
 Be that as it may, we cannot say that the district court committed clear error when it found that the parties' products are different from one another. While we may not have described them as "distinctly different," the record supports a finding that the types of insurance offered by the parties is sufficiently different to render them dissimilar. Since there is no clear error, this finding must stand.
 
 C. Area and Manner of Concurrent Use
 
 23
 The district court found that there was "no question" that the parties' marks were being used in the same area and that this factor weighed in favor of the plaintiff. This finding is supported by the evidence and is not clearly erroneous, and the weight given to it does not constitute an abuse of discretion by the court. In its brief, the defendant argues that the court erred in finding this factor to be in the plaintiff's favor, urging that the parties' uses of the term "Meridian" is not the same and that they do not utilize it in the same marketing channels. However, we will not consider these allegations since doing so would amount to a complete de novo review of the district court's decision below and would necessitate our weighing factual issues, a task for which the district court is better suited. Furthermore, an appellee's brief is not the appropriate place for a victorious party to contest one adverse finding by the district court--that is the province of a cross-appeal. Having failed to file a cross-appeal, the defendant's arguments are improper, and we refuse to reach them here.
 
 D. Degree of Care Used by Consumers
 
 24
 The next factor considered by the district court was the degree of care used by consumers when purchasing insurance. The district court did not buy (no pun intended) the plaintiff's arguments that its insureds might be confused by the defendant, stating that it could not accept that "clients of [plaintiff] are not likely to use some degree of care in picking their insurance companies" and that there was "absolutely no evidence that clients have contacted [defendant] seeking to buy policies that are offered by [plaintiff]...." Tr. at 143. As a preliminary matter, we note that the district court's focus on the sale of insurance policies throughout its ruling gives short shrift to the business of insurance as a whole. Undoubtedly, insurance companies want to sell policies and not lose revenue because would-be customers mistakenly bought policies from a competitor after being confused by its name. Equally true, however, is that insurance companies want to maintain a fairly stable customer base and not lose existing clients over perceived slights or disagreements. Indeed, the value of an insurance company is not limited to the amount of money in its bank accounts, but also includes intangibles such as goodwill. See Newark Morning Ledger Co. v. United States, 507 U.S. 546, 555, 113 S.Ct. 1670, 1675, 123 L.Ed.2d 288 (1993) (defining "goodwill" as "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers ....") (quoting Metropolitan National Bank v. St. Louis Dispatch Co., 149 U.S. 436, 446, 13 S.Ct. 944, 948, 37 L.Ed. 799 (1893) (other citations omitted)). The district court does not appear to have taken into account that injuries to goodwill, as well as economic injuries from lost sales opportunities, can take place from consumer confusion and in this respect is in error.
 
 
 25
 With that said, the district court's determination that potential customers of the plaintiff would use a high degree of care in purchasing policies is incomplete and, therefore, incorrect. While the court focused on the fact that there was no evidence of customers contacting the defendant to buy a policy when they meant to call the plaintiff, it overlooked evidence in the record which showed that the plaintiff's insureds do not exercise a great deal of care when attempting to correspond with the plaintiff. During cross examination by the defendant, Leon Neddo, general counsel for plaintiff, testified that he had seen copies of checks sent to the company by its insureds which were made out to "Meridian Insurance" instead of "Meridian Mutual Insurance Company." In addition, he testified that the plaintiff's bills may have said "Make your check payable to Meridian Insurance." Tr. at 66. This evidence shows that neither the plaintiff's clients nor the plaintiff itself religiously used the name "Meridian Mutual Insurance Company" and that nobody exercised a great deal of care to refer to the plaintiff by its full name. This lack of care could lead plaintiff's clients to mistakenly contact the defendant (which, as we discuss below, actually happened). Keeping in mind that the plaintiff need only demonstrate a "better than negligible" likelihood of confusion at the preliminary injunction state, the district court's decision to weigh this factor in favor of the defendant was an abuse of discretion.E. Strength of Complainant's Mark
 
 
 26
 Fifth, the district court considered the strength of the plaintiff's "Meridian" mark and found that "while there is no doubt the federal registration brings with it a great deal of strength, overall ... there is some weakness with regard to this particular mark in the manner that it is being used in this industry." Tr. at 144. The record adequately supports this finding, and it is not clearly erroneous.
 
 F. Actual Confusion
 
 27
 With regard to the next factor, actual confusion, the district court found that the evidence produced by the plaintiff "is far from showing any type of actual confusion, certainly not in the selling of insurance policies." Tr. at 144. During the preliminary injunction hearing, the plaintiff elicited testimony from Christine Lukens, a client service manager employed by the defendant, indicating that the defendant had received telephone calls which were intended to reach the plaintiff. Lukens testified that around October or November 1996, she received two telephone calls and three voice mail messages from four different people regarding car accidents. At this time, the defendant had a 1-800 number and was listed in a 1800 directory using the name "Meridian." Lukens testified that one of the individuals she talked to was "angry" and complained to her that he was "really unhappy because we were not doing a good job." Tr. at 99. Lukens also testified that she did not return the voice mail messages to alert the callers that they had reached the wrong company. Lukens stated that the defendant received no other misdirected calls after this period of time.
 
 
 28
 At the outset of his discussion of the element of actual confusion, the district judge noted that actual confusion is "not required to be shown for purposes of this particular motion...." Tr. at 144. The court did not recognize, however, that evidence of actual confusion, "if available, is entitled to substantial weight." International Kennel, 846 F.2d at 1090, quoting Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1330 (7th Cir.1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). The testimony of Christine Lukens certainly established that there was actual confusion on the part of consumers between the plaintiff and the defendant--not just by one person, but by four. The district judge was not overwhelmed by this evidence, and he found that it did not show any actual confusion in the selling of insurance. The court did not consider that the confusion may have taken place in a realm of insurance apart from sales, noting that "[a]t best, four people may have been confused in who they should call with regard to the servicing of policies that had already been sold." Tr. at 144. This finding, however, amounts to clear error.
 
 
 29
 As we discussed earlier, whether a consumer is confused when he calls a company to buy an insurance policy or when he calls to make a claim under an existing policy is immaterial. The importance of the actual confusion element rests in the fact that confusion leads to an injury to one of the parties, an outcome which is no less present in the service context than in the sales context. A difference certainly exists in the type of injury incurred: in the sales context, actual confusion can lead to lost profits, whereas in the service context, such as the present case, the injury may be to goodwill or reputation. However, the fact that a company's goodwill, rather than its pocketbook, is injured by actual confusion does not render the confusion meaningless. See The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2nd Cir.1996) ("To show actual confusion [under the Lanham Act], [the plaintiff] must demonstrate that [the defendant's] use 'could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.' ") (quoting Lang v. Retirement Living Publishing Co., Inc., 949 F.2d 576, 583 (2nd Cir.1991)). In this case, the testimony shows that at least one of the callers who accidently reached the defendant was angry and that three of the callers were never informed by the defendant of their error. This confusion had the potential to injure the plaintiff's goodwill and reputation with its customers, and the district court erred in once again considering only the sales realm and not the service realm in assessing actual confusion.
 
 
 30
 We do recognize that the defendants did offer some testimony which demonstrated their efforts to minimize any future chance of confusion between the parties. David Schwimmer stated that the defendant dropped its 1-800 listing after receiving the five telephone calls and that his decision to do so was based, in part, on the fact that he "didn't want any more wrong phone calls or confusion from the operator giving the wrong number...." Tr. at 113-14. However, while this evidence may be probative during a trial on the merits in the context of a permanent injunction against the defendant, we find it to be of little value at this stage of the proceedings. We have recognized that "while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." International Kennel, 846 F.2d at 1089, quoting World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir.1971). The fact that the defendants have taken steps to avoid future confusion does not obviate the potential necessity for a preliminary injunction, and such steps do not constitute the "overwhelming proof" needed to refute the evidence of actual confusion offered by the plaintiff. Given the evidence presented at the preliminary injunction hearing, we find that the district court committed clear error in finding that there was no likelihood of confusion between the names of the parties in this case.
 
 
 31
 In their brief, the appellees assert that "isolated instances of persons inquiring about the possible association of the parties alone is insufficient to establish actual confusion." Appellee's Brief at 26. For this proposition, the appellees cite Ziebart International Corp. v. After Market Associates, 802 F.2d 220 (7th Cir.1986) and Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482 (10th Cir.1987). These cases are not applicable here, though, because they found that such isolated instances were insufficient to establish actual confusion in the context of a trial, not in a preliminary injunction hearing. The appellees also ballyhoo the fact that the plaintiff failed to produce a consumer survey at the injunction hearing showing that a likelihood of confusion exists because of the parties' use of "Meridian." In doing so, they draw to our attention the fact that such failure "cannot be excused by a lack of resources on the part of the plaintiff." Appellee's Brief at 26. The appellees once again overlook the fact that we are dealing with a preliminary injunction here, not any relief sought after a trial on the merits. The Supreme Court has set forth that
 
 
 32
 The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party is thus not required to prove his case in full at a preliminary injunction hearing....
 
 
 33
 University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981), citing Progress Development Corp. v. Mitchell, 286 F.2d 222 (7th Cir.1961); see also International Kennel, 846 F.2d at 1086 ("the plaintiff's burden at the preliminary injunction stage is slight, and on two separate occasions this court has declined to mandate a consumer survey at this preliminary stage."). While the appellees' objections may support the denial of a permanent injunction in this case, they do not sway our decision that the district was clearly erroneous in finding that no actual confusion took place in this case.
 
 G. Intent
 
 34
 Finally, the district court considered the factor of the defendants' intent in adopting the name "Meridian" and found that the evidence did not support a finding that the defendants intended to "palm off" their product as that of the plaintiff. The plaintiff does not (and cannot) argue that the evidence so showed, but instead urges that this factor is designed to take into account "the level of culpability of a defendant, in general." Appellant's Brief at 19. The plaintiff recites testimony of David Schwimmer to show that he was aware that the name "Meridian" had already been used by other corporations in Indiana and California and that it was being used in Indiana in connection with the insurance business. This testimony, Plaintiff suggests, indicates bad faith on the part of the defendants, since they "charged ahead with their adoption of 'Meridian' " despite their knowledge that the name was already being used by an insurance-related company in Indiana. Appellant's Brief at 20. However, in the trademark infringement context, "intent" refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else. See Libman Co. v. Vining Industries, Inc., 69 F.3d 1360, 1363 (7th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1878, 135 L.Ed.2d 173 (1996). Since the record does not support such a showing, the district court's determination that the intent element was not satisfied by the plaintiff is not clearly erroneous.
 
 
 35
 In sum, the following factors support a likelihood of confusion in this case: the similarity in appearance and suggestion of the marks; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; and the presence of actual confusion. Weighed against the other factors, we believe that the plaintiff has been able to establish that a likelihood of confusion exists in this case, and the district court was erroneous in finding otherwise. As such, the plaintiff's motion for a preliminary injunction was erroneously denied, and we must reverse. However, the finding of a likelihood of confusion does not end our inquiry; three factors still necessitate examination before a preliminary injunction can be granted or refused. Because the district court found that no likelihood of confusion existed, it did not reach these remaining requirements. The record, however, contains information from which we can assess these factors, the task to which we now turn.
 
 2. Inadequate Remedy/Irreparable Harm
 
 36
 The plaintiff next needed to establish that it has an inadequate remedy at law and would suffer irreparable harm if a preliminary injunction does not issue. As we discussed above, the plaintiff has suffered injury to its goodwill through the defendant's use of the name "Meridian." Such damage can constitute irreparable harm for which a plaintiff has no adequate remedy at law. See Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis, 35 F.3d 1134, 1140 (7th Cir.1994) ("showing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.") (quoting Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp., 627 F.2d 44, 53 & n. 7 (7th Cir.1980)). The record demonstrates that the plaintiff has satisfied this element, and an injunction appears proper.
 
 
 37
 The plaintiff has thus demonstrated that it has a likelihood of success on the merits and that it has suffered irreparable harm for which there is no adequate remedy at law. Before we turn to the remaining factors to be considered in granting or denying preliminary relief, we must determine the proper scope a preliminary injunction should have in this case. In the district court, the plaintiff sought injunctive relief of two different scopes: 1) in its original motion, the plaintiff sought to prohibit the defendants' use of "Meridian" in any manner while promoting their insurance policies and to require the defendants to recall all materials they issued bearing the "Meridian" name; and 2) in a Rule 59(e) motion filed after the denial of its motion for a preliminary injunction, the plaintiff sought to prohibit the defendants from using "Meridian" in any public forum, such as telephone directories, internet sites, and advertising in newspapers and broadcast media. On the record before us, we agree with the district court insofar as it determined that the first injunction requested by the plaintiff is too broad. However, we disagree with the district court's denial of the second, more limited relief sought, which would not appear to unduly burden either party, and we will therefore proceed to an examination of the third and fourth factors with such relief in mind.
 
 3. Balance of Harms
 
 38
 The third factor in assessing the propriety of an injunction is a balancing of the harms; that is, the irreparable harm the nonmovant will suffer if an injunction is granted is weighed against the irreparable damage the movant will suffer if it is not. In its Rule 59(e) motion, the plaintiff noted that "[d]efendants' method of developing a client base does not depend upon advertising in the public forum," since the defendants generate new business from calling prospective clients and not from advertisements directed to the public at large. Rec. Doc. 27 at 6. In its response, the defendants did not refute these assertions, but argued in a conclusory fashion (and without specific support) that "[t]he scope of the requested injunction would adversely impact defendants in a significant manner." Rec. Doc. 28 at 4. Without elaborating any reasons for his decision, the district judge denied the plaintiff's Rule 59(e) motion, stating that "I'm going to deny the motion. I don't believe as presently framed that it is appropriate to grant the motion." Tr. of Proceedings, March 20, 1997 at 3. It appears that, once again, the district judge focused on the plaintiff's likelihood of success on the merits and did not examine any of the other elements to be considered in connection with a preliminary injunction.
 
 
 39
 This amounts to an abuse of discretion, and the district judge should have considered the balance of harms in this case. Our examination of the record shows that the plaintiff's contentions in its 59(e) motion are correct, and that the defendants would suffer no (or, at the most, very minimal) irreparable injury if they were enjoined from using "Meridian" in the general public forum. David Schwimmer testified that the defendant contacts prospective clients primarily through "cold calls" to companies of a certain size in the Chicago metropolitan area. The defendants even admit in their response to the 59(e) motion that they do not presently use billboard, newspaper, or broadcast advertising, although they do have a listing in the phone book and a site on the internet. A limited injunction such as that proposed by the plaintiff in its 59(e) motion would cause little harm to the defendants. On the other hand, as outlined above, the plaintiff has suffered, and runs the risk of continuing to suffer, irreparable damage to its goodwill by the defendants' use of the name "Meridian." The harm to the plaintiff if no injunction is issued therefore outweighs any harm to the defendants if one is entered, and this factor weighs in support of granting the plaintiff its requested relief. The district court's failure to consider this factor was an abuse of discretion.
 
 
 40
 We also wish to note that our task in reviewing the district court's decision in this case would have been made easier if the court had issued a written, rather than an oral, decision on both the initial motion and the 59(e) motion weighing the remaining preliminary injunction factors. Particularly with respect to the 59(e) motion, we cannot review a district court's determinations for clear error when no determinations have been made. We do not mean to suggest that district judges, already overburdened by expanding caseloads, must examine every alternative argument, no matter how meritless or far-fetched, contained in the parties' briefs. However, in the preliminary injunction context, where time is often of the essence, it would be advisable for district courts to examine, even if only briefly, all four preliminary injunction considerations. Such a practice would help expedite this Court's review of the grant or denial of a preliminary injunction and help protect the interests of the parties in the case.
 
 4. Public Interest
 
 41
 The final factor to be considered in conjunction with a preliminary injunction is the public interest, which is "the effect that granting or denying the injunction will have on nonparties." Grossbaum, 100 F.3d at 1291. The record demonstrates that a limited injunction would not adversely affect the public interest in this case, and this factor is not influential in our determination. As the plaintiff states in its 59(e) brief, the issuance of a limited preliminary injunction will, in essence, maintain the status quo in this case and will prevent, rather than cause, harm to the general public through the elimination of potential confusion. However, the record does not demonstrate that non-parties will be greatly affected by an injunction, and this factor is not of great import in the present case.
 
 
 42
 In sum, therefore, the plaintiff has demonstrated a likelihood of success on the merits, has shown that it has suffered (and may continue to suffer) irreparable injury from the defendant's use of "Meridian" for which there is no adequate remedy at law, and has shown that the harm it will suffer without an injunction outweighs the irreparable harm to the defendants if an injunction is issued. As such, we find that plaintiff has established that a preliminary injunction is appropriate in this case, and that the district court erred in not issuing one. Therefore, we reverse the district court's denial of preliminary injunctive relief and remand this case to the district court with instructions to enter a preliminary injunction prohibiting the defendants from using the name "Meridian" in any public forum, including but not limited to telephone directories, internet pages, billboards, broadcast advertisements, and newspaper advertisements. The injunction shall not prohibit the defendants from carrying on their direct telephone solicitation of clients within the defendant's present operating territory.
 
 CONCLUSION
 
 43
 For the reasons set forth above, the district court's denial of a preliminary injunction is REVERSED, and this case is REMANDED with instructions to the district court to enter a preliminary injunction against the defendants consistent with this opinion. To the extent practicable, the district court should expedite the proceedings and trial in this matter. Mandate is hereby issued forthwith.
 
 
 
 [1]
 Due to the similarity of the parties' names, we can only refer to them in this opinion by the unimaginative designations "plaintiff" and "defendant." Since there are three defendants in the case, we will refer to Meridian Insurance Group singularly as "defendant," to the individual defendants by name, and to all three collectively as "defendants."