**MEDIC ALERT FOUNDATION UNITED STATES, INC.,**
Plaintiff,

v.

**COREL CORPORATION, Defendant.**

No. 97 C 2521.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1999.

Robert Leslie Byman, Jenner & Block, David M. Feinberg, United States Court of Appeals, Chicago, IL, for Plaintiff.

Stuart Smith, Daniel L. Jasica, Gordan & Glickson, P.C., Monica L. Thompson, Scott Alan Lefelar, Rudnick & Wolfe, Chicago, Il, Kathryn J. Fritz, Rodger R. Cole, Fenwick, Davis & West, Palto Alto, Ca, for Defendant.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiff Medic Alert Foundation United States, Inc. ("Medic Alert") is a not-for-profit corporation that provides identification of and information about its members' non-apparent medical conditions for use in emergency situations. Medic Alert members wear jewelry (necklaces or bracelets) and carry wallet cards, each of which bears the Medic Alert logo, the member's individualized medical information, and a telephone number where more detailed medical information can be accessed. The Medic Alert logo consists of the words "MEDIC" and "ALERT" in all capital letters running from top to bottom on either side of a caduceus, a commonly recognized symbol of medicine and healing. Medic Alert's logo, trademark, and service mark are all duly registered and in use.

Defendant Corel Corporation ("Corel") is a computer software company that manufactures word processing and graphics programs. At the heart of this lawsuit is a feature included in many of Corel's software programs: a library of "clipart" or

graphic images from which a user may select an image and insert it into a document. Users access clipart images by opening the software application and then opening the clipart file. Corel either owns the images in these libraries or leases them from third-parties. Corel includes in all of its software packages an end-user license agreement that states, in part, that users may not use "computer images related to identifiable individuals or entities in a manner which suggests their association with or endorsement of any product or service."

In 1991, Corel entered into a licensing agreement with TechPool Studios, Inc. ("TechPool") for a number of clipart images, including one that resembles the Medic Alert logo. The image ("first disputed image") is one of a circular pendant with the words "MEDIC" and "ALERT" depicted on either side of a caduceus and a cross-like symbol, stacked one on top of the other. One of TechPool's designers created the image by copying a bracelet that bore the Medic Alert logo, but did not bear the trademark registration symbol. TechPool did not have any sort of licensing agreement with Medic Alert, but represented to Corel that the image was licensed and that it did not infringe "any patent, copyright or other industrial or intellectual property right or contractual right or obligations of any third party."

Corel, naming the image "medalert.eps," first sent it into the public domain as part of CorelDRAW 4, in May 1993. In 1994, Corel deleted the words "MEDIC" and "ALERT" from the medalert.eps graphic, and software products produced from that time forward used the second, wordless image only. Thus, this second image ("second disputed image") consists of a caduceus above a cross-like symbol (once associated with the American Medical As-

sociation), depicted inside a circular pendant. In all, Corel has distributed eighteen software products that at some point contained one of the two versions of the clipart images. At no point have the images appeared on any Corel packaging or in any Corel advertising, all of which prominently displays Corel's name.[1]

Medic Alert, through its attorneys, first notified Corel of the alleged infringement of Medic Alert's trademark in September 1996. Corel immediately contacted Tech-Pool, which attempted to gain licensing permission from Medic Alert. When this effort failed, in January 1997, Corel identified the medalert.eps image as one that should be removed whenever the opportunity for "remastering" arose. Remastering is a process by which changes are made to an existing version of a software product between inventory runs. This remastering took place from January 1997 to June 1997. As of November 1998, all Corel software that ever contained the medalert.eps image is either no longer being shipped or has been remastered to exclude the image altogether. Because it doesn't track this information, Corel is not sure if any units of software in Corel's inventory contain the disputed images. A consumer bought software with one of the disputed images in it at a retail store in March 1998.

There is evidence of the commercial use of one of the disputed images by a company called Tabak's Health Products ("Tabak's"), which altered the image to read "Health Alert" and placed it on its direct mail solicitation for vitamins. Several Medic Alert members have contacted Medic Alert's customer representatives by phone regarding Corel's use of clipart images that are confusingly similar to the Medic Alert marks, and two sent letters after seeing the Tabak's solicitation.

---

[1] A review of the clipart file in the court's WordPerfect program revealed neither disputed image. I did, however, find an image that merits reprinting here:

These members expressed their confusion regarding whether Medic Alert had authorized or permitted Corel and/or Tabak's to use the Medic Alert marks.[2]

Medic Alert has suffered no monetary loss as a result of Corel's inclusion of the disputed images in its software save for expenses related to this litigation and staff time devoted to the Tabak's incident. It is not aware of any effect on donations. Medic Alert has no evidence to suggest that inclusion of the disputed images assisted Corel in selling its software.

Medic Alert filed suit against Corel alleging federal trademark infringement (count I) and contributory federal trademark infringement (count II), under 15 U.S.C. § 1114; federal false designation (count III) and contributory federal false designation (count IV), under 15 U.S.C. § 1125(a); Illinois deceptive trade practices (count V), under 815 ILCS 510/2; Illinois common-law trademark infringement and unfair competition (count VI) and Illinois contributory common-law trademark infringement (count VII); federal trademark dilution (count VIII), under 15 U.S.C. § 1125(c); Illinois trademark dilution (count IX), under 765 ILCS 1035/15; and Illinois counterfeit trademark infringement (count X), under 765 ILCS 1040/2 and 1040/7. Corel moves for summary judgment on all counts.

Summary judgment is proper if, drawing all inferences in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Given the fact-intensive nature of trademark infringement disputes, the Seventh Circuit has cautioned district courts to approach motions for summary judgment on these issues with great caution. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993).

*Trademark Infringement*

To prevail against Corel on its claims of trademark infringement, false designation, and deceptive trade practices, Medic Alert must show: 1) that it possesses a valid trademark, and 2) that there is a likelihood of confusion on the part of the public. *See Nike, Inc. v. "Just Did It" Enterprises*, 6 F.3d 1225, 1227 (7th Cir.1993)(federal trademark infringement); *Rust Env't. & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir.1997)(federal false designation); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993)(state trademark infringement and unfair competition); *Juno Online Serv. v. Juno Lighting Inc.*, 979 F.Supp. 684, 692 (N.D.Ill.1997)(Illinois deceptive trade practices). A trademark is not a property right, but an identifier: if there is no one who is likely to be confused by the alleged infringer, there can be no impairment of the interest that the trademark statute protects. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995). Here, the parties do not dispute the validity of Medic Alert's trademark. Thus, the only question to resolve is whether Corel's inclusion of the meda-

---

**2.** Corel objects to admission of evidence of the customer phone calls and letters on the grounds that: (1) the person testifying to them—Medic Alert President Tanya Glazebrook—has no personal knowledge of them, and (2) they constitute double hearsay. I deny the objection on both grounds. First, as Medic Alert's designated Fed.R.Civ.P. 30(b)(6) expert, Glazebrook is competent to testify to matters within the company's knowledge, not only to those within her personal knowledge. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996). Second, evidence of the calls and letters is not hearsay, as it is being offered not for the truth, but to show that customers were confused. *See Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1260 (7th Cir.1995).

Corel also objects to evidence—to which Glazebrook testified—that an unidentified company in South Africa used a disputed image to create promotional materials. Medic Alert's South African affiliate, a corporate entity separate from the plaintiff, addressed the situation to its satisfaction without any involvement from plaintiff. Information about this incident is outside the scope of plaintiff's Rule 30(b)(6) witness, and no corroborating evidence is presented. It is therefore inadmissible.

lert.eps graphic in its software is likely to cause confusion on the part of consumers.

Before turning to the evidence, I want to clarify the sort of confusion the law is concerned about. In short, consumer confusion as to what? Corel argues that the proper question is whether consumers looking to buy Corel products would be confused either as to their proper source (source confusion) or as to an affiliation between the parties' respective services and products that actually aided in selling Corel's products (approval confusion). Medic Alert concedes that there is no evidence of source confusion, but argues that Corel's definition of approval confusion is overly narrow. It asserts that consumers need only think that Medic Alert authorized Corel to use its trademarked symbol in creating the medalert.eps graphic or otherwise approved of its use, regardless of whether they see that use as an endorsement of Corel's products or whether Corel sales benefitted as a result.

■■■■ The answer lies somewhere in between. The Lanham Act prohibits the use of any designation that is likely to cause consumer confusion "as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]." 15 U.S.C. § 1125(a)(1). Here, the relevant confusion is whether the customer would believe that Medic Alert sponsored, endorsed or was otherwise affiliated with Corel's software. See Nike, Inc. v. "Just Did It" Enter., 6 F.3d 1225, 1228–29 (7th Cir.1993). The approval at issue, therefore, is not whether Medic Alert approved of the use (or alleged use) of its trademarked image, but rather, whether Medic Alert approved of Corel's software. While perceived permis-sion to use a trademarked image can amount to perceived product approval, see Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 544 (5th Cir.1998), it does not constitute per se evidence of such, and a finding that consumers are likely to be confused about the former would not end the ultimate factual inquiry as Medic Alert suggests. In Pebble Beach, the defendant golf course operator used trademarked logos of famous golf courses in promotional materials for its own less-famous course, thereby suggesting that the famous courses had permitted use of their marks in this manner and thus had endorsed defendant's course. See id. at 535. Here, where the use of the alleged infringing mark is not part of promotional materials, but rather hidden inside a software program, any confusion as to perceived permission does not constitute necessarily confusion as to perceived endorsement.[3]

Nonetheless, Medic Alert's hurdle on consumer confusion is not as high as Corel asserts. Consumer confusion as to Medic's affiliation with or approval of Corel's software would not require a finding that the confusion "actually aided in the selling of Corel's products." Corel cites Nike for this proposition, but misreads the court's opinion slightly. In Nike, defendant Just Did It Enterprises sold t-shirts and sweatshirts with a "swoosh" design similar to Nike's swoosh and the word "MIKE." Id. The court held that the question whether customers would believe MIKE and the swoosh design to be affiliated with NIKE is a question of fact, emphasizing that it is the purchasers and potential purchasers of such shirts, and not simply persons viewing them from afar, whose views must be considered. Id. at 1229; see also Dorr–Oliver, Inc. v. Fluid–Quip, Inc., 94 F.3d

3. Medic Alert's other offered cases—Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769 (8th Cir.1994) and University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir.1985)—do not convince me otherwise. In each case, the court found the relevant confusion to be whether use of the plaintiff's trademark or trade dress by the defendant caused consumers to believe plaintiff had licensed or approved of defendant's product itself. See Anheuser–Busch, 28 F.3d at 775 (likelihood of confusion existed regarding plaintiff beer company's approval of defendant's advertising parody); University of Georgia, 756 F.2d at 1546 (likelihood of confusion existed regarding plaintiff university's licensing of school mascot for use in beer's name).

376, 380 (7th Cir.1996) (finding relevant consumers to be those in the market to buy the parties' product, not just those viewing same). Importantly, the court did *not* hold that there must be proof that the consumer confusion actually aided the defendant to sell its products.

The relevant inquiry therefore is whether consumers in the market for computer software are likely to think, upon seeing one or the other medalert.eps image in the clipart file, that Medic Alert has somehow endorsed Corel software or is otherwise affiliated with its production or offering. This Circuit looks to seven factors when assessing likelihood for consumer confusion: 1) the degree of similarity between the marks in appearance and suggestion; 2) the similarity of the products for which the name is used; 3) the area and manner of concurrent use; 4) the degree of care likely to be used by consumers; 5) the strength of the complainant's mark; 6) actual confusion; and 7) an intent on the part of the alleged infringer. *See Nike,* 6 F.3d at 1228; *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). None of these factors considered alone is dispositive of the matter, and the weight each is to be accorded varies from case to case. *See Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1115 (7th Cir.1997). Application of the seven-factor test in the present case makes clear that no reasonable jury could find a likelihood of confusion on the facts presented.

Turning first to the marks themselves, I note that while neither disputed image in this case is identical to the Medic Alert trademark, both are certainly suggestive when viewed in their totality. The first disputed image is obviously more similar than the second, and with the words "MEDIC" and "ALERT" emblazoned on it, could be mistaken for the Medic Alert trademark. The second image is made up only of the cadaceus, a common symbol used in the medical profession and which is a part of the Medic Alert trademark, and the cross-like symbol, one of the oldest we have and which is not. In fact, the two things that most strongly evoke associations with Medic Alert are the pendant-shaped border (because Medic Alert chooses to place its trademark on jewelry) and the image's identifying title "medalert.eps," neither of which is actually part of the Medic Alert trademark. In short, I find that the second disputed image is not very similar to the Medic Alert trademark, although it is possible that a reasonable consumer would associate the two images.

It turns out, however, that the similarity of the marks is the strongest factor in Medic Alert's favor, and that evaluation of the other factors leads undeniably to only one conclusion. Even if I presume that the marks are similar, and that the Medic Alert mark is strong, it is a reach to suggest that the reasonable consumer would see the medalert.eps graphic as a Medic Alert endorsement or approval of Corel's product. This is largely because of the unrelatedness of the parties' two products and the manner in which Corel uses the medalert.eps image. While trademark protection can extend to another person's use of one's name on related, but non-competitive goods, and the parties need not be direct competitors, *see* MCCARTHY ON TRADEMARKS, § 24.03; *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1089 (7th Cir. 1988), there is a limit to the reasonable consumers' power of association. The products and services offered by the respective parties here could not be more dissimilar: Medic Alert's goods and services are specialized in the medical and health field, whereas Corel offers basic word processing and multi-subject graphics programs. Given the total absence of similarity or relatedness in the parties' goods and services, it is difficult to believe that a consumer who sees the medalert.eps graphic and who is familiar with the Medic Alert trademark would believe that Medic

Alert, a non-profit health care foundation, had endorsed the computer software.[4]

Similarly, the manner in which Corel uses the medalert.eps grapic further reduces the possibility of consumer confusion. Corel asserts that the context in which the disputed clipart images appeared—as one graphic among thousands in a clipart library—eliminates any possibility of confusion as to whether Medic Alert endorses the software. That is undoubtedly right. Upon seeing the thousands of images in the clipart file, it is highly doubtful that the reasonable consumer would think each image an endorsement of Corel's software.

Moreover, there is absolutely no evidence in the record that Corel intended to confuse consumers about whether Medic Alert had endorsed Corel's software and thereby profit from Medic Alert's good will. *See Meridian Mutual*, 128 F.3d at 1119–20. It is undisputed that Corel acquired the first disputed image from Tech-Pool, pursuant to a license agreement in which TechPool represented that it was "either the creator and owner of the [image] or the authorized licensee thereof." Moreover, as soon as Corel became aware of Medic Alert's concerns and trademark, it took steps to first secure Medic Alert's permission, and then to remaster its copies to remove the images. Given that Corel was totally unaware of Medic Alert's trademark when it first adopted the image, it is simply impossible that it would have intended to benefit from Medic Alert's good will or endorsement.

Finally, as proof of actual consumer confusion is particularly strong evidence of likelihood of consumer confusion, *see Nike*, 6 F.3d at 1231, it could be enough to preclude summary judgment. Medic Alert asserts that several members have called to express their confusion regarding whether Medic Alert had authorized Corel

to use the Medic Alert marks. That is not enough to establish evidence of actual consumer confusion. What would be relevant is evidence of customers contacting Medic Alert representatives—having seen the medalert.eps graphic—regarding Medic Alert's endorsement or support of Corel's software. But there is none.

Taking all of this evidence together, there simply is no genuine issue of material fact as to whether consumers in the market for computer software would somehow be more or less inclined to purchase Corel software because it believes that Medic Alert has given its seal of approval to the product. Medic Alert essentially concedes this point: it admits that there are no facts to suggest that when a software consumer purchases a Corel software product, the consumer believes that Medic Alert endorses Corel or the Corel software product. Likewise, it is unlikely that a person seeking a provider of emergency health care information would be less likely to turn to Medic Alert because it thinks that it has endorsed computer software. I find that as a matter of law, the evidence simply does not support a finding of a likelihood of consumer confusion in this case.

Accordingly, Corel's motion for summary judgment is granted as to counts I, III, V, and VI.

## Contributory Infringement

■ Medic Alert argues that Corel is guilty of contributory federal trademark infringement (count II), contributing to federal false designation (count IV), and contributory common law trademark infringement (count VII) because it knowingly permitted its products to be used by others as a tool for trademark infringement. It argues that Corel knew after September 1996 that Medic Alert did not license its mark for use in Corel products

---

4. If Corel marketed a health or medical-related software program, for which the endorsement of a respected medical information provider would be desired or in whose production Medic Alert might join, the result here possibly might be different. But, that is not this case.

and that Corel software users could use the programs to infringe the Medic Alert marks. Medic Alert asserts that Corel immediately should have recalled software in the distribution channel, and that when it continued to sell its existing inventory of software containing the images, it committed contributory trademark infringement.

Corel counters that it sold its software with an end-user agreement that forbids the use on any of Corel's clipart images related to identifiable entities for any commercial purposes or in a manner that suggests their association with or endorsement of any product or service; it had no actual knowledge of any possible infringement prior to first being contacted by Medic Alert in September 1996; and once it learned that Medic Alert challenged its right to use the image, it took steps to remaster its products for sale without the image.

It is well established that if a manufacturer continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer is responsible for any harm done. *See Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). The standard is not whether a manufacturer "could reasonably anticipate" possible infringement, but rather whether it knew or had reason to know that a third party is engaging in trademark infringement and continued to sell its products to that third-party. *See id.* at n. 13. Actual knowledge, for purposes of trademark infringement, is satisfied by a finding of willful blindness, which means a person must suspect wrongdoing and deliberately fail to investigate. *See Hard Rock Cafe Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143, 1149 (7th Cir.1992).

Medic Alert's evidence that third parties were engaged in trademark infringement is that Tabak's Health Products used Co-

relDraw! 5.0 to create an image with the words "Health Alert" and without the cross-like symbol. Tabak's then used envelopes bearing this image in an August 1997 direct-mail sales campaign for its vitamins, which was seen by at least two Medic Alert members.

Assuming without finding that Tabak's use of the medalert.eps image constitutes trademark infringement, it is not enough to hold Corel liable as a matter of law for contributory infringement. In light of Corel's end-user agreement, it had no reason to expect that one of its software users would violate the contract and use one of its images for commercial use, until it was provided with actual information that someone had done so. Tabak's letters were sent in August 1997; Medic Alert learned about it in September 1997. There is no evidence that Corel was ever notified of Tabak's use of the image until it learned about it when it was produced as part of this lawsuit. Even then, there was no reason to think that more users would do so, again in light of its end-user agreement. Moreover, by the time Tabak's use of the image for commercial purposes came to Medic Alert's attention in September 1997, all of Corel's software products already had been remastered so that none included the disputed image. I reject Medic Alert's argument that Corel should be liable because it didn't recall all existing software from its distributors.

Accordingly, I grant summary judgment for Corel on counts II, IV, and VII.

*Federal and State Dilution*

Medic Alert also seeks injunctive relief under both the Federal Trademark Dilution Act (FTDA), 15 U.S.C. § 1125(c), and the Illinois Anti–Dilution Act, 765 ILCS 1035/15,[5] arguing that Corel's wide distribution of software with the disputed images is diluting the inherent and acquired distinctiveness of its trademark, in which it

---

**5.** Illinois recently enacted a new anti-dilution statute, codified at 765 ILCS 1036/65, which took effect Jan. 1, 1998. As the new statute

does not affect suits already pending on its effective date, *see* 765 ILCS 1036/90, I examine Medic Alert's claim under the old statute.

has invested significant time and resources.

■ As a threshold matter, Corel argues that the FTDA is inapplicable to this case, as its effective date of January 16, 1996 is several years after Corel began using the disputed images. Corel argues that such application would amount to an impermissible retroactive application of the act, citing *S Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F.Supp. 1012, 1021 (N.D.Ill.1998). Medic Alert counters that the FTDA does permit prospective injunctions for ongoing violations that began prior to the Act's enactment, a position taken by the Eighth Circuit. *See Viacom Inc. v. Ingram Enter., Inc.*, 141 F.3d 886, 889–90 (8th Cir.1998). I find the Eighth Circuit's analysis persuasive and find that prospective injunctive relief is available under the FTDA, even if the original violation began prior to the effective date of the act, subject to principles of equity. In so finding, I too consider binding the Supreme Court's language in *Landgraf v. USI Film Products* that "when the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." 511 U.S. 244, 272, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). As the Eighth Circuit stated, consideration of prospective relief under the FTDA is subject to principles of equity, *see* 15 U.S.C. § 1125(c)(1), and it is those principles—which are likely to be particularly strong in a case where the allegedly diluting conduct began prior to the act's enactment—that should govern. *See Viacom*, 141 F.3d at 889.

■ The FTDA provides injunctive relief, subject to the principles of equity and reasonableness, to the owner of a famous mark against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. *See* 15 U.S.C. § 1125(c)(1). The Illinois Anti–Dilution Act, in effect at the time, permits a trademark owner to obtain an injunction enjoining the use by another of a similar mark "if there exists a likelihood... of dilution of the distinctive quality of the mark, ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." *See* 765 ILCS 1035/15.

The parties heavily contest whether Corel's use of the disputed images violates either the FTDA or the state act. Medic Alert seeks an injunction precluding further sale of any existing products containing the disputed images or requiring a recall of said products. I need not address those disputes, however, for principles of equity and reasonableness do not support issuance of an injunction in this case, even were dilution to be established. Corel software products produced from 1994 forward contained only the second, wordless disputed image, whose diluting effect (if any) would be significantly less than that of the first disputed image. Further, all Corel products containing either disputed image were remastered as of June 1997, and no product containing either disputed image is being shipped to distributors presently. Given that the production of the first disputed image ceased five years ago, production of the second (and less problematic) disputed image ceased nearly two years ago, and the image is displayed as one of thousands of clipart images inside the software application, the number of consumers likely to encounter either disputed image can only be small. Thus, realistically, any possible diluting effect is significantly limited. I find that the dangers of any actual dilution simply do not outweigh the potential costs to Corel and its distributors of identifying the disputed products, stopping distribution, and issuing a recall.

Accordingly, Corel's motion for summary judgment is granted on counts VIII and IX.

*Illinois Counterfeit Trademark Act*

Corel asserts that count X is no longer valid as the Illinois General Assembly re-

pealed the statutory provision that created a private right of action under the Act, effective June 1, 1997. *See* 765 ILCS 1040/7. The unconditional repeal of the provision probably renders it retroactive, but I need not decide that issue, as Medic Alert has waived the claim by failing to argue it.

*Conclusion*

For the foregoing reasons, I grant summary judgment for defendant Corel Corporation on all counts.