**COLGATE–PALMOLIVE COMPANY,**
Plaintiff,

v.

**NORTH AMERICAN CHEMICAL CORPORATION, Defendant.**

United States District Court
S. D. New York.
Aug. 19, 1964.

Walter I. Seligsohn, and Donald A. Bright, New York City, for plaintiff.

Havens, Wandless, Stitt & Tighe, New York City, for defendant, John C. Oram, Jr., New York City, of counsel.

TYLER, District Judge.

Plaintiff seeks a preliminary injunction in a suit alleging trademark infringement and unfair competition through claimed simulation of plaintiff's packaging of detergents.

Defendant has countered with a motion, concededly filed one day late, asking that the case be dismissed for improper venue, or in the alternative, that it be transferred to the District Court for the District of New Jersey. 28 U.S.C. § 1404 (a). Defendant, of course, has also moved for an order enlarging its time to answer or otherwise move against the complaint—i. e. for an order validating the timeliness of service made one day late.

For reasons to be summarized hereinafter, it is determined that venue in this District is proper and that plaintiff is entitled to a preliminary injunction.

I.  *Defendant's Motion to Enlarge Time to Answer or Move.*

Plaintiff's complaint and motion for preliminary injunction were served on

April 8, 1964, twenty months after plaintiff had threatened suit for trademark infringement and unfair competition. On April 29, 1964, defendant served and filed a motion to dismiss the action for improper venue or, in the alternative, to transfer the cause to the District Court for the District of New Jersey.

Defense counsel acknowledge the late service, claiming that the matter had been inadvertently scheduled on their litigation docket as returnable on April 29; that they had not received the supporting affidavit from their client's president until that day; and that delay in service was inadvertent and not designed to prejudice plaintiff or delay the proceedings. Accordingly, defendant applies [1] under Rule 6(b)(2), F.R.Civ.P., to enlarge nunc pro tunc its time to answer or otherwise move against the complaint from April 28 to April 29, 1964 and to validate the timeliness of service made on April 29, 1964 of its motion to dismiss or transfer.

■ Although it can be argued that defendant's counsel have not established excusable neglect on their part, I am constrained to grant their application for an extension of time under all the circumstances and to proceed to the merits of defendant's venue motions.

## II. *Defendant's Motion to Dismiss or Transfer.*

Defendant is a New Jersey corporation with its principal place of business in Paterson, New Jersey. It is in the business of manufacturing and selling private label detergents and soap powders.

Defendant moves for dismissal of the instant case under Rule 12(b)(3), F.R. Civ.P., claiming that venue is improper under 28 U.S.C. § 1391(c). That section provides that:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Since defendant is neither incorporated nor licensed to do business in New York, controversy centers around the issue of whether defendant in fact is "doing business" here.

Defendant has no banking connection in the State of New York. It does not advertise its products for sale within this state, nor does it maintain any warehousing facilities here. It claims that its contacts with the State of New York are limited to the mere solicitation of business. To that end, it has supplied a list, which may or may not be inclusive, of several discount and department stores and supermarket chains in New York for which it has manufactured products for sale under private label. Such sales were allegedly solicited in New York but consummated in New Jersey.

Service of process was made at a New York City office upon Louis D'Almeida, defendant's New York resident vice president, who is the officer in charge of packaging design. Although the moving affidavit alleges that the office where service was made was maintained primarily for D'Almeida's convenience and the conducting of his personal affairs, the building directory lists defendant corporation as having an office there. In addition, the Manhattan telephone directory has continued to list defendant corporation as having an address and phone number at that building but fails to contain a listing for D'Almeida at that address.[2]

---

1. Notice of this defense motion was served on May 21, 1964. The delay was apparently caused by fruitless negotiations between counsel to stipulate an extension of time for defendant to move.

2. Defendant's affidavits allege that D'Almeida has personally maintained the New York City office expenses, including the telephone bills, since January 1, 1964, has carried the leasehold in his name and has paid the rent since March 1, 1964. Defendant, however, fails to deny that defendant reimburses D'Almeida for these expenses. It also fails to deny that it bore these expenses at the time that the conduct giving rise to the cause of action occurred.

■ I find that, under these circumstances and for the purposes of this action, defendant is doing business in New York.

True, mere solicitation of business, without more, has been deemed insufficient to subject a corporate entity to the jurisdiction of the solicitation forum. But I do not find that the defendant's activities in New York are so limited. While the existence of an office and a telephone listing in defendant's name is some indication of activities by the defendant in the forum, the use to which these facilities are put is of greater import. Defendant's assertions that its New York vice president carries on none of its business here are implausible, both because of the corporate office he holds and because of its obvious need for an officer, as opposed to a salesman, in this district.

Any doubt here is resolved against the defendant, especially because I find that the present suit arises out of conduct occurring inside this state and district. Defendant disputes this principally on the ground that sales of the allegedly infringing product occurred in Puerto Rico. Its resident vice president, however, is the officer in charge of packaging design during the period relevant to this dispute; thus, I conclude that there is proper venue in the district where an alleged infringement has its inception, i. e., in the designing stage.

In the alternative, defendant has moved for a transfer to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) on the basis of assertions that the defense of this action in the Southern District of New York would involve greater expenses and inconvenience than those required if the action were to proceed to trial in the District of New Jersey. More particularly, defendant urges that "all of [its] books and records necessary to the defense of this action, together with all of its personnel familiar with the facts and circumstances surrounding the transactions involved in the present dispute between the parties are located within the State of New Jersey, except Louis D'Almeida, who is a resident of the State of New York."

As is well known, the United States District Court for the District of New Jersey sits, among other places, at Newark, New Jersey. Scheduled travel time by bus transportation is 50 to 55 minutes on the trip from Paterson, New Jersey, the place of defendant's principal office, to Newark, while travel time on the bus from Paterson to New York City, where this court sits, is scheduled at 45 minutes. With these scheduled times as a reasonable comparative yardstick for any mode of travel, it is perhaps unnecessary to go further to demonstrate the essential implausibility of defendant's arguments.

Beyond this, however, defendant's affidavit fails to allege specific facts which show that venue is improper in the face of plaintiff's claims that the present venue would be more convenient for it since its witnesses are either in New York City or Puerto Rico and that thus the latter would enjoy better transportation connections and hotel facilities here. It also appears indisputable that, execpt for such witnesses as may be required from Puerto Rico, all presently known witnesses on both sides will be amenable to service of subpoena within a hundred-mile radius of this court.

■ Under 28 U.S.C. § 1404(a), the court may transfer an action to a more convenient forum when plaintiff's choice of forum appears to work a substantial hardship upon defendants and witnesses which cannot be justified by a showing of countervailing convenience or necessity on plaintiff's part. United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D.N.Y.1960). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L.Ed. 1055 (1947). Those words have been interpreted to mean:

"(a) that a defendant has the burden of making out a strong case for

a transfer and (b) that the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses or what otherwise might be the balance of 'convenience' as between 'the parties'." Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. den., 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950).

Defendant has failed to carry its burden not only for reasons heretofore summarized but also because it has not specifically apprised this court of the names and whereabouts of its key witnesses and the general nature of their testimony. Nor has defendant established that the books and records upon which it will rely are located in New Jersey. All that defendant has said in essence is that its offices and principal books and records are in New Jersey. Why the latter documents will be material to the major issues involved in this litigation is not readily apparent. This court will not exercise its discretion to transfer suit on the basis of broad and general statements of convenience. National Tea Co. v. The Marseille, 142 F. Supp. 415 (S.D.N.Y.1956); Lehn & Fink Products Corp. v. Milner Products Co., 117 F.Supp. 320 (S.D.N.Y.1953).

Furthermore, this court will not be imposed upon to grant a change of venue where relatively short distances are involved, and where travel time between defendant's main office and the two forums in question is substantially the same. Deutsch v. Dunne, 197 F.Supp. 907 (E.D. N.Y.1961); Davis v. American Viscose Corp., 159 F.Supp. 218 (W.D.Pa.1958).

Defendant's motion is denied because there is no clear showing of inconvenience in this district or that the "interests of justice" would be better served in the District of New Jersey.

III. *Plaintiff's Motion for Preliminary Injunction.*

Plaintiff moves for a preliminary order restraining defendant from infringing plaintiff's trademark and from competing unfairly by imitating the design and "get-up" of the detergent packages which plaintiff sells in Puerto Rico.

For over 14 years, plaintiff has marketed in Puerto Rico a laundry and household detergent in a blue package under the name FAB. More than $2,000,000 has been spent over these years in advertising, and the product is now reputed to be the leading brand detergent in Puerto Rico, its current sales exceeding $2,000,000 annually.

In 1959, plaintiff introduced a new detergent for automatic washers in Puerto Rico which it called FAB CONCENTRADO. This product is marketed in a red package the design of which is the converse of the color scheme of the blue package. Although automatic washing machines apparently are not yet common in Puerto Rico, plaintiff's sales of its red package have exceeded $270,000 for the period from 1959 to 1963. Its advertising expenses for FAB CONCENTRADO have been almost $10,000 for approximately the same period of time.

In 1962, defendant started to supply the Pueblo Supermarkets chain in Puerto Rico with a household detergent called PUEBLO in blue packages which are alleged to bear a close resemblance to plaintiff's FAB blue packages. When this came to its attention in August, 1962, plaintiff protested to Pueblo Supermarkets and to defendant. Indeed, communications of protest went to the latter's vice-president in charge of packaging design, Louis D'Almeida, and to its main office in Paterson. No reply was ever received to these objections.

In fact, after plaintiff lodged its protest, defendant proceeded to expand its alleged infringing conduct by shipping to Puerto Rico in March, 1963 a larger size of its blue package which is reputed to compete with the larger size of plaintiff's blue package. Thereafter, in October, 1963, defendant introduced a detergent for automatic washers in a red package which is the converse of its blue

package. This product is called PUEBLO CONCENTRADO. At the times when defendant introduced its blue and red packages, respectively, there were no other detergent packages similar to either type being marketed by third parties in Puerto Rico.

The basic distinguishing features of plaintiff's blue package, as I view it, are: (1) the manner of displaying the brand name FAB in perspective; (2) the use of white capital block letters edged in red for the name; (3) a red geometric figure below the name, and (4) a blue background for the whole design. The design consisting of these four elements has been registered in the Patent Office by plaintiff as Trademark No. 552,459.

Defendant's blue package displays the • following similarities: (1) display of the brand name PUEBLO in perspective; (2) use of white capital block letters edged in red for the name; (3) a red geometric figure below the name, and (4) a blue background for the whole design. In addition, plaintiff not unreasonably presses some 24 supplemental points of lesser resemblance between the various panels on its blue package and on those of defendant's blue package.

Since I find at least the same kind of similarities between the parties' red packages, there is no need to discuss these in detail.

Defendant denies plaintiff's allegations of simulation and infringement and claims that both of its packages are the result of independent commercial design and were not intended to copy any other commercial soap powder packages. It asserts that commercial experience has shown that blue and red are colors most acceptable to the consumer, and that the distinction between the trademarks FAB and PUEBLO would prevent any likelihood of confusion among consumers. Furthermore, defendant argues that even it be assumed that at the time when its notices of protest were sent plaintiff was entitled to a preliminary injunction, such drastic relief is presently barred by laches in that plaintiff has permitted a period of approximately 20 months to elapse before commencing suit.

█ The party seeking a preliminary injunction bears the burden of establishing the right to such relief. A preliminary injunction is an extraordinary remedy which will not normally be granted except upon a clear showing of probable success for and irreparable injury to the plaintiff.

█ Upon studying the exhibits of the various packages in controversy, I determine that there is such a marked degree of similarity between the packaging designs as to indicate likelihood of success for plaintiff. Admittedly, there is nothing to prevent a second comer on the market from making and selling the identical product of the first comer. In so doing, however, the second comer must take care to name and dress his product in such a manner as to avoid the likelihood of confusion:

> "Where goods are identical and sold through the same channels of trade and to the same class of purchasers, less similarity than might otherwise be required may lead to confusion. * * * Also significant on the question of likelihood of confusion are the buying habits of purchasers of the goods involved." Car-Freshner Corp. v. Marlenn Products Co., 183 F.Supp. 20, 44 (D.Md.1960).

The courts generally are reluctant to disregard confusion on the part of a plaintiff's less careful customers. As soon as it appears that a defendant has imitated a "get-up", proof of actual confusion or deception of purchasers will not be required. Thus, dissimilarity in trade names, if such truly exists, becomes a manner of minor importance. See, e. g., Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960) (Brylcreem and Valcream); American Chicle Co. v. Topps Chewing Gum, 208 F.2d 560 (2d Cir. 1953) (Chiclets and Topps); My-T Fine Corp. v. Samuels, 69 F.2d 76 (2d Cir. 1934) (My-T Fine and Velmo).

The unresolved question remaining is whether plaintiff has forfeited its claim to a preliminary injunction by "sleeping on its rights". The granting of such relief normally presupposes the existence of urgent circumstances in the business life of plaintiff; thus, plaintiff's conduct is usually examined to see whether it has acted with requisite speed and prudence to protect itself. Also to be considered in cases of this nature is the harm that may befall defendant upon issuance of injunctive relief inasmuch as a defendant very often has invested substantial amounts in promoting the good will of its products during the time lapse before plaintiff takes formal action.

But the courts will not shy away from issuing such relief where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer. As the Court of Appeals for this Circuit expressed the point thirty years ago:

"Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed." My-T Fine Corp. v. Samuels, 69 F.2d 76, 78 (2d Cir. 1934).

Having found the marked similarities as indicated between the parties' red and blue packages, it is difficult not to infer an intention on defendant's part to plagiarize plaintiff's package designs. The difficulty is enhanced by the fact that defendant continued and indeed expanded its conduct after notice from plaintiff at a time when defendant could reasonably have minimized its efforts and expenses and when no good will of major value had attached to its activities.

The immediately foregoing portion of this opinion constitutes the findings of fact and conclusions of law required by Rule 65, F.R.Civ.P. The preliminary injunction is granted, conditioned upon security required by the same Rule in the amount of $10,000. Settle an order.